UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PEDRO TAVARES,

                Plaintiff,                13-cv-3148 (PKC)(MHD)

    -against-                MEMORANDUM
                                                           AND ORDER

NEW YORK CITY HEALTH AND HOSPITALS
CORP., LYNDA D. CURTIS, MICHAEL
DEUTSCH, BARTOSZ GROBELNY,
LAWRENCE MIETELES, NELSON MUTHRA,
MARYANN GENOVESE, and MARK SCOTT,

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Pedro Tavares, proceeding pro se, brings this action against the New York City Health and Hospitals Corporation ("HHC"),[1] Lynda D. Curtis, Michael Deutsch, Bartosz Grobelny, and Mark Scott (collectively with HHC, the "City Defendants"); and Lawrence Mieteles, Nelson Muthra and Maryann Genovese, all three employees of the New York State Department of Corrections and Community Supervision ("DOCCS") (collectively, the "DOCCS Defendants"). He asserts causes of action under 42 U.S.C. § 1983 and state law, alleging that he was provided inadequate medical care which caused him to develop a hearing impairment, and that the defendants falsified medical records in order to cover up the real cause of his impairment.

        The City Defendants and the DOCCS Defendants have moved separately to

---

[1] HHC is sued herein as "N.Y.C. Belleview [sic] Hospital." Bellevue Hospital is a facility owned and operated by HHC, however, and is not an independently suable entity. See Nogbou v. Mayrose, No. 07 Civ. 3763, 2009 WL 3334805, at *7 (Oct. 15, 2009), aff'd, 400 F. App'x 617 (2d Cir. 2010). By statute, HHC has the capacity to be sued. N.Y. Unconsol. Laws § 7385(1).

dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the following reasons, the City Defendants' motion is denied with respect to defendant Deutsch, but granted with respect to the other City Defendants. The DOCCS Defendants' motions are granted in their entirety.

BACKGROUND

The following facts are taken from Tavares's amended complaint (Dkt. No. 36) unless otherwise noted, and are accepted as true for the purposes of this motion.[2] On March 10, 2011, Tavares, who was then incarcerated at the George R. Vierno Center ("GRVC"), a facility operated by the New York City Department of Corrections ("DOC"), was discharged from Bellevue Hospital after receiving surgery for carpal tunnel syndrome on his left hand. (Am. Compl. ¶¶ 5, 6.) He was discharged mere hours after the surgery,[3] and the doctor who did so, defendant Michael Deutsch, failed to direct corrections officers to refrain from handcuffing him. (Id. ¶ 6.) He also failed to protect the wound with "some type of gasket" to prevent infection. (Opp'n to City Defs.' Mot. 10; see also id. at 2 (stating that "the surgery was [sic] been left open").) As a result, his hand became infected "all the way up to elbow [sic], or further up to the arm" (Am. Compl. ¶ 6), and Tavares was readmitted to Bellevue on March 17. (Id. ¶ 7.) He

---

[2] In opposition to the DOCCS Defendants' motion to dismiss, Tavares has submitted an affidavit (Dkt. No. 68, "Pl.'s Aff.") to which are attached as exhibits medical records documenting the care he received from Bellevue Hospital and from DOCCS. The DOCCS medical records were also attached to Tavares's original complaint (Dkt. No. 2). Tavares also previously submitted the Bellevue records as attachments to a "notice of motion" filed in response to an early motion to dismiss by the City Defendants that was subsequently withdrawn (Dkt. No. 58).

Although generally a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, new factual allegations in a pro se plaintiff's opposition papers may be read as supplementing the allegations in the complaint, at least when they are consistent with them. See, e.g., Vail v. City of N.Y., __ F. Supp. 3d __, No. 12-cv-5125(KMK), 2014 WL 6772264, at *12 (S.D.N.Y. Dec. 2, 2014); Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012); Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990). Accordingly, the Court will consider these medical records as though they were exhibits to the amended complaint. It will also consider new allegations consistent with the complaint that are contained in Tavares's opposition papers.

[3] The Bellevue medical records indicate instead that Tavares was discharged the morning following his surgery. (See Pl.'s Aff. Ex. 1.) Tavares claims that this is inaccurate, and that he was in fact discharged on the day of his surgery between 4 and 7 p.m. (Dkt. No. 58, at 3.) The time discrepancy is not material to the resolution of these motions.

stayed there until March 22, and was administered a course of antibiotics, which was necessary to avoid the amputation of his hand. (Id.) Tavares alleges that the doctor who administered the antibiotics, defendant Bartosz Grobelny, did not take any precautionary measures and failed to take into account Tavares's age and other medical conditions. (Id.)

During his stay at Bellevue, Tavares began to notice that he was losing his hearing. (Id. ¶ 8.) He informed the hospital staff, which ordered a hearing test. (Id.) He was discharged without being told his test results. (Id.) Tavares was then transferred out of DOC custody, to DOCCS's Downstate Correctional Facility. (Id. ¶ 9.) On July 7, he underwent an audiology test, which determined that he suffered from High Tone Hearing Impairment in both ears. (Id. ¶¶ 9, 10; Pl.'s Aff. Ex. 4 (Dkt. No. 68).). On July 15, Tavares saw defendant Dr. Lawrence Mieteles, an otolaryngology specialist, who noted that Tavares's hearing loss might be linked to noise exposure, since Tavares used to work in construction. (Am. Compl. ¶ 10; Pl.'s Aff. Ex. 5.). Tavares claims, however, that he never told Mieteles about his work in construction, and furthermore that he never worked with noisy machinery. (Am. Compl. ¶ 10.) He alleges that his hearing loss was in fact caused by "the excessive amount of antibiotic [sic] ordered by Defendant Dr. Bartosz Grobelny" (id. ¶ 9), and that Mieteles was attempting to "cover-up" the City Defendants' negligence in giving him these antibiotics. (Id. ¶ 10.) He further alleges that the other DOCCS Defendants, Dr. Nelson Muthra and Dr. Maryann Genovese, were "co-conspirator[s]" with Mieteles (Id. ¶ 11), because his medical records contain a written statement by Muthra that noise exposure caused Tavares's hearing loss (Pl.'s Aff. ¶ 8; Pl.'s Aff. Ex. 6), and Genovese "endorsed" that statement. (Pl.'s Aff. ¶ 9.)

Tavares filed this action on May 3, 2013 (Dkt. No. 2), and filed the amended complaint on January 10, 2014. The City Defendants moved to dismiss on May 29. (Dkt. No.

55.)  Mieteles and Muthra moved to dismiss on June 26 (Dkt. No. 60), and Genovese moved separately on September 10.  (Dkt. No. 74.)  As of December 3, all three motions were fully briefed.

LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  In assessing the complaint, the district court must draw all reasonable inferences in favor of the non-movant.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to any presumption of truth.  Iqbal, 556 U.S. at 678.

Courts have a duty to construe a complaint filed by a pro se plaintiff liberally, conducting their examination with "special solicitude [and] interpreting the complaint to raise the strongest claims that it suggests."  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

DISCUSSION

I.  Section 1983 Claims

  A.  Claims against the City Defendants

    1.  Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42. U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Furthermore, "[s]ection 1997e(a) requires 'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly.'" Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).

In Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), however, the Second Circuit held that failure to exhaust administrative remedies may sometimes be excused.[4] This is the case: (1) if the administrative remedies were not in fact available to the prisoner; (2) if the defendants are estopped from raising non-exhaustion as an affirmative defense, because they failed to raise or preserve it, or because of their own actions inhibiting the inmate's exhaustion of remedies; or (3) if other "special circumstances" have been plausibly alleged that justify the prisoner's failure to exhaust. Id. at 686. One such "special circumstance" is when an inmate is transferred a short time after the grievable incident occurs to a correctional facility governed by a different governmental jurisdiction and a different grievance procedure. Hartry v. Cnty. of Suffolk, 755 F. Supp. 2d 422, 433–34 (E.D.N.Y. 2010) (collecting cases).

DOC provides a multi-step Inmate Grievance Resolution Program ("IGRP"), and

---

[4] The Second Circuit has since noted that Hemphill is in tension with Woodford's later holding that the PLRA requires "proper exhaustion." See Amador, 655 F.3d at 102. In the absence of any clear indication that Hemphill has been overruled, however, this Court will continue to treat it as good law. McClinton v. Connolly, No. 13-CV-2375(KMW)(DCF), 2014 WL 5020593, at *2 n.4 (S.D.N.Y. Oct. 8, 2014); Smith v. City of N.Y., No. 12 Civ. 3303(CM), 2013 WL 5434144, at *9 (S.D.N.Y. Sept. 26, 2013).

the failure to make use of the IGRP constitutes failure to exhaust under the PLRA.[5]  See, e.g., Seabrook v. City of N.Y., No. 13-CV-6620(JPO), 2014 WL 7176052, at *3 (S.D.N.Y. Dec. 16, 2014).  Claims of deliberate indifference to medical needs, such as those Tavares brings here, are covered by the IGRP.  See, e.g., Harris v. Bowden, No. 03 Civ. 1617(LAP), 2006 WL 738110, at *3 (S.D.N.Y. Mar. 23, 2006).  Tavares concedes that he never filed a grievance in connection with the violations he alleges against the City Defendants.  (Am. Compl. ¶ 20).  He argues, however, that his failure to exhaust should be excused, because he was transferred out of DOC custody shortly after his claims against the City Defendants arose, and because he was misinformed about the scope of the IGRP.

    First, Tavares alleges that he was transferred to a DOCCS facility on March 27, 2011, a mere five (according to the complaint) or six (according to the medical records submitted by Tavares) days after his second discharge from Bellevue, and argues that this should excuse his failure to exhaust.  The City Defendants, however, dispute this version of events, claiming that Tavares did not leave DOC custody until June 17, 2011.  They urge the Court to verify this through DOC's online inmate tracking system, and to take judicial notice of the information obtained therefrom.  While a court deciding a motion to dismiss must generally accept the complaint's factual allegations as true, it is permitted to reject the truthfulness of those allegations when they are contradicted by matters of which judicial notice may be taken, such as matters of public record.  Fowlkes v. Rodriguez, 584 F. Supp. 2d 561, 574 (E.D.N.Y. 2008); see also Davison v. Ventrus Biosciences, Inc., No. 13 Civ. 3119(RMB), 2014 WL 1805242, at *10

---

[5] The Court takes judicial notice of the IGRP, as courts in this district have regularly done.  See Myers v. City of N.Y., 11 Civ. 8525(PAE), 2012 WL 3776707, at *4 n.6 (S.D.N.Y. Aug. 29, 2012) (collecting cases).  The version of the IGRP that was in effect in 2011 is available of the DOC's website.  See N.Y. City Dep't of Correction, Directive 3375R-A (effective from Mar. 13, 2008 to Sept. 10, 2012), available at http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.

(S.D.N.Y. May 5, 2014) (rejecting allegations contradicted by public SEC filings); Makowski v. United Bhd. of Carpenters & Joiners of Am., No. 08 Civ. 6150(PAC), 2010 WL 3026510, at *2 n.4 (S.D.N.Y. Aug. 2, 2010) (rejecting allegations contradicted by the docket in another action). Courts in this district have taken judicial notice of information obtained from online inmate tracking services. See, e.g., Tribble v. City of N.Y., No. 10 Civ. 8697(JMF), 2013 WL 69229, at *1 n.1 (S.D.N.Y. Jan. 3, 2013); Williams v. City of N.Y., No. 07 Civ. 3764(RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008) (using DOCCS's tracking service).

Although the Court was unable to find Tavares on the DOC's website—presumably because he is no longer in DOC custody—a search of DOCCS's online inmate lookup service confirms that Tavares did not enter DOCCS custody until June 17, 2011.[6] In his opposition papers, Tavares does not respond to the City Defendants' argument and does not attempt to defend his original timeline, for instance by alleging that there was a gap between his time in DOC custody and his time in DOCCS custody. In light of this, the Court is constrained to reject Tavares's claim that he was transferred on March 27.[7] Although a transfer five or six days after the grievable incident might constitute a "special circumstance" excusing exhaustion, a transfer nearly three months later does not. See Burns v. Moore, No. 99-CV-0966(LMM)(THK), 2002 WL 91607 (S.D.N.Y. Jan. 24, 2002) (holding that the plaintiff's transfer two months after his claim arose did not excuse his failure to exhaust); Miles v. Cnty. of Broome, No. 3:04-CV-1147, 2006 WL 561247 (N.D.N.Y. Mar. 6, 2006) (holding that exhaustion was not excused where the plaintiff was transferred sixteen, seventeen or eighteen

---

[6] The service is available at http://nysdoccslookup.doccs.ny.gov.
[7] The City Defendants' account is bolstered by Tavares's own pre-motion letter to the Court, dated Feb. 11, 2014, in which he explains that during the three-month period before June 17, he made many trips to Bellevue and Elmhurst Hospitals (both facilities operated by HHC), was resentenced in court, and attended physical therapy. (Dkt. No. 39, at 2.) He claims that these comings and goings can be corroborated by DOC, rather than DOCCS, records.

days after the subject of his "primary gripes" occurred).

Tavares next claims, in his memorandum in opposition to the City Defendants' motion, that the grievance coordinator at GRVC and the law library officer at the Bellevue Hospital Ward both told him that they did not accept grievances on medical issues. The City Defendants characterize this as an estoppel argument, under Hemphill's second prong, and argue that it is applicable only against a defendant whose own actions inhibited the plaintiff from exhausting. See Hemphill, 380 F.3d at 689 (suggesting that, "depending on the facts pertaining to each defendant, it is possible that some individual defendants may be estopped, while others may not be"). Because neither the grievance coordinator nor the law library officer is a defendant in this action, the defendants argue that estoppel does not apply.

But even if estoppel does not apply, the allegation that officials misinformed the plaintiff about the grievance procedure "may be relevant to an analysis of excuse on grounds other than estoppel." Smith v. City of N.Y., No. 12 Civ. 3303(CM), 2013 WL 5434144, at *11 (S.D.N.Y. Sept. 26, 2013). Specifically, "[a]n administrative remedy is not available, and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." Id. at *16 (quoting Medina v. Nassau Cnty. Sherriff Dep't, No. 11 Civ. 228 (JFB)(GRB), 2013 WL 4832803, at *6 (E.D.N.Y. Sept. 10, 2013)); see also Burgess v. Garvin, No. 01 Civ. 10994(GEL), 2004 WL 527053, at *3 (S.D.N.Y. Mar. 16, 2004) ("remedies are not available where prisoners are not informed of their existence"). In Smith, one plaintiff "was told that the grievance process was not available to him for this particular prison condition." Smith, 2013 WL 5434144, at *14. The court concluded that remedies could not be deemed to be "available" to that plaintiff, and also that this might constitute a "special circumstance" excusing exhaustion. Id. at *17. Just as

in Smith, Tavares was allegedly told that the IGRP would not address his grievances because they pertained to medical issues. If proven, this would excuse Tavares's failure to exhaust remedies under the IGRP, under either the first or the third Hemphill prong. While Tavares provides little relevant factual detail, he does identify the officials who allegedly misinformed him; taking into account Tavares's pro se status, this is sufficient at the motion to dismiss stage. Accordingly, the Court concludes that Tavares's failure to exhaust remedies under the IGRP is excused, although the City Defendants will be at liberty to raise the issue at the summary judgment stage.

2. Failure to State a Claim

A plaintiff suing under section 1983 must show that the defendants "deprived him of a right secured by the Constitution or laws of the United States." Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004). In Estelle v. Gamble, 429 U.S. 97, 104–05 (1976), the Supreme Court recognized that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. This is the type of violation that underlies Tavares's section 1983 claims against the City Defendants. To prevail on these claims, Tavares must prove an objective element and a subjective element. The objective element relates to the alleged deprivation suffered: Tavares must show that he "was actually deprived of adequate medical care," and that "the inadequacy in medical care [was] sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006). The subjective element relates to the City Defendants' state of mind: Tavares must show that they "acted with deliberate indifference to inmate health," i.e., that they "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result." Id. at 280. This standard is

demanding—"the equivalent of criminal recklessness."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

With the exception of Deutsch, Tavares's section 1983 claims against the City Defendants fail because he has not adequately pleaded the subjective element against them.  As an initial matter, Tavares does not allege that the City Defendants ignored his carpal tunnel syndrome or inordinately delayed treating it, nor does he allege that they lacked diligence in attending to his subsequent infection.  Indeed, both the carpal tunnel syndrome and the infection were successfully treated.  Tavares's medical records show that he returned to Bellevue for a follow-up visit on June 8, 2011.  (Pl.'s Aff. Ex. 3.)  In a letter to the Court dated February 11, 2014, Tavares also claims that between March and June 2011, he went "back and forht [sic] to Belleview [sic] Hospital and to Elmshurst [sic] Hospital," and also attended physical therapy three times per week.  (Dkt. No. 39, at 2.)  Rather than evincing deliberate indifference, this shows that Tavares received a sustained level of medical attention.  See Washington v. City of N.Y., No. 10 Civ. 389(LTS)(JLC), 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) (finding no deliberate indifference where the plaintiff was treated several times by doctors and was given painkillers); Colon v. City of N.Y., No. 08 Civ. 3142(HB), 2009 WL 1424169, at *8 (S.D.N.Y. May 21, 2009) (finding no deliberate indifference where the plaintiff received significant medical attention for several months following his injury); Brown v. Selwin, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999) (finding no deliberate indifference where the plaintiff was treated on numerous occasions).

Tavares alleges that Grobelny was deliberately indifferent to known medical risks when he made choices about a particular treatment—the course of antibiotics—for him.  He claims that, when Grobelny administered the antibiotics, he failed to take into account Tavares's

age and to order tests that would have detected Tavares's diabetes, high blood pressure and chronic back problems. He alleges that these factors all made it more likely that the antibiotics would cause hearing loss. But it is well settled that "the question whether . . . additional diagnostic techniques . . . [are] indicated is a classic example of a matter for medical judgment," and that the decision not to order certain diagnostic tests "does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107. Grobelny's decision not to order tests is understandable because he was faced with an emergency situation: an infection which, if left untreated, could lead to the amputation of Tavares's hand. When faced with an emergency, members of prison staff do not violate the Eighth Amendment unless they act "maliciously and sadistically for the very purpose of causing harm." Wilson v. Seiter, 501 U.S. 294, 302 (1991) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)); see also Salahuddin, 467 F.3d at 280 (noting that the deliberate indifference standard applies to "medical-treatment cases not arising from emergency situations"). Nothing in Tavares's allegations raises the inference that Grobelny acted with anything approaching criminal recklessness, let alone malice and sadism, when he administered the antibiotics.

Tavares has not adequately and plausibly alleged that any of the City Defendants were deliberately indifferent in connection with the handcuffing episode. The transportation officers who handcuffed Tavares without regard to his recent wrist surgery are not defendants in this action. Moreover, "the doctrine of respondeat superior cannot be used to establish liability under Section 1983." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Because Curtis, a Vice President at HHC, and Warden Scott were not personally involved in the decision to handcuff Tavares, the officers' alleged deliberate indifference cannot be attributed to them. Finally, Tavares does not allege that Deutsch was aware of the risk that the officers would

handcuff him: in fact, he claims that it "is not a protocol" to handcuff a prisoner who has a wounded hand.  (Opp'n to City Defs.' Mot. 11.)  Because deliberate indifference in this context requires showing that the defendant was actually aware of the risk he allegedly disregarded, see Salahuddin, 467 F.3d at 280, Tavares has not plausibly alleged that Deutsch was deliberately indifferent when he failed to direct the officers not to handcuff Tavares.

Construing his submissions liberally, however, Tavares has successfully alleged the subjective element with respect to Deutsch's actions upon discharging him after his surgery. Tavares claims that Deutsch disregarded the fact that Tavares suffered from type-2 diabetes and was thus at higher risk of infection, and that Deutsch discharged him early and failed to take necessary precautions to protect the wound, because Tavares was needed in court for resentencing.  (Opp'n to City Defs.' Mot. 9–10.)  Tavares alleges that the failure to protect the wound was no mere oversight, because Deutsch represented to him "that there was no problem to leave the surgery that way."  (Id. at 2.)  Tavares thus alleges that Deutsch knew of Tavares's heightened susceptibility to infection, and consciously disregarded it by prioritizing the scheduled resentencing over Tavares's medical needs.  The allegation that a physician chose to give less efficacious treatment for reasons not deriving from medical judgment can support a deliberate indifference claim.  See Chance v. Armstrong, 143 F.3d 698, 703–04 (2d Cir. 1998) (holding that the plaintiff had alleged deliberate indifference where the defendant chose a type of treatment based on monetary incentives); Stevens v. Goord, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("judgments that have no sound medical basis . . . and appear designed simply to justify an easier course of treatment . . . may provide the basis of a[n Eight Amendment] claim").

Tavares has also plausibly alleged that he received inadequate care, based on Deutsch's failure to protect his wound.  The extent of the inadequacy is not clear from Tavares's

submissions.  In the amended complaint, Tavares simply states that the wound was left "unbandage[d]."  (Am. Compl. ¶ 16.)  He elaborates in his opposition papers, stating that "the surgery was [sic] been left open" (Opp'n to City Defs.' Mot. 2), faulting Deutsch for "not protecting the hand with some type of gasket in order for the open wound not to get infected" (id. at 10), and referring to "a newly open wound."  (Id. at 10.)  Nevertheless, and although a reference to sutures in the Bellevue medical records conflicts with the suggestion that Tavares was discharged before his surgical wound was even closed (see Pl.'s Aff. Ex. 2), Tavares has at the very least alleged that Deutsch failed to dress or bandage the wound, or to put Tavares's wrist in a splint.  At this stage in this litigation, the Court cannot conclude as a matter of law that this constituted adequate medical care.  See Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003) (stating that "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment").  Accordingly, Tavares has successfully alleged a deliberate indifference claim against Deutsch based on the failure to protect his wound.  He has not alleged, however, that it is unreasonable to discharge a patient who underwent carpal tunnel surgery, even one with type-2 diabetes, a few hours after the operation.  Thus, the portion of his claim premised on the time of his discharge from Bellevue is dismissed.

     Tavares's claim against HHC, a municipal organization, fails because he has not satisfied the requirements of Monell v. Department of Socal Services, 436 U.S. 658 (1978).  In that case, the Supreme Court held that a municipal organization may be held liable under section 1983 only if the plaintiff's injury is the result of municipal policy, custom, or practice.  Id. at 694.  It may not be held liable solely "by application of the doctrine of respondeat superior."  Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986).  Generally, "a single incident alleged

in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998). Tavares has not alleged any facts suggesting that Deutsch's failure to protect his wound was anything other than an isolated incident. He does not allege that HHC has a policy, or even an informal understanding, requiring doctors to prioritize patients' court appearances over their medical needs. Nor does he allege that HHC management had actual or constructive notice that doctors frequently did this, and failed to act to remedy the problem. See Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1360 (2011). With respect to the transportation officers (who the Court assumes arguendo violated Tavares's rights and were HHC employees), Tavares alleges that they were acting in violation of protocol, as noted earlier. Accordingly, the claim against HHC must be dismissed.

        To summarize, Tavares has not successfully alleged the subjective element of his deliberate indifference claim against any of the individual City Defendants besides Deutsch, and accordingly, his section 1983 claims against them must be dismissed. His claim against HHC is dismissed for failure to show a municipal policy, custom, or practice. His claim against Deutsch survives, however, but only insofar as it is premised on Deutsch's failure to bandage or otherwise protect Tavares's wound following the carpal tunnel surgery.

  B.  Claims against the DOCCS Defendants

        Tavares alleges that the DOCCS Defendants conspired to cover up the City Defendants' wrongdoing in causing him to develop hearing loss, by fabricating a false reason for that hearing loss. Tavares does not allege that he was provided with inadequate medical care at

any point after he was transferred to a DOCCS-run facility.[8] His claims against the DOCCS Defendants are thus best understood as section 1983 "cover-up" and conspiracy claims. The DOCCS Defendants argue that these claims should be dismissed because Tavares failed to exhaust the administrative remedies provided by the DOCCS's grievance resolution program, but the Court need not address that argument, because Tavares has not adequately stated the claims.

In a section 1983 claim alleging a cover-up by government agents, the constitutional right at issue is the First Amendment right of access to courts: the theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up. See Christopher v. Harbury, 536 U.S. 403, 413–14 & n.11 (2002) (describing these claims as "backward-looking access claims"). The Second Circuit has emphasized, however, that "[t]he viability of [such] claims is far from clear," pointing out that the Harbury decision was careful not to endorse their validity. Sousa v. Marquez, 702 F.3d 124, 128 (2d Cir. 2012).

Nevertheless, even assuming backward-looking access claims are actionable, Tavares's fails. "[S]uch claims are available only if a judicial remedy was 'completely foreclosed'" by the alleged cover-up. Id. (quoting Broudy v. Mather, 460 F.3d 106, 120 (D.C. Cir. 2006)). Tavares has not alleged that the DOCCS Defendants' actions prevented him from litigating his underlying Eighth Amendment and state-law medical malpractice claims against

---

[8] In his submission in opposition to the DOCCS Defendants' motion, Tavares claims that the DOCCS Defendants delayed issuing him hearing aids, and that this delay constituted cruel and unusual punishment violating the Eighth Amendment, as well as a violation of the Americans with Disabilities Act ("ADA"). (Opp'n to DOCCS Defs.' Mot. 15–16; see also Pl.'s Aff. ¶¶ 17–19.) A plaintiff, however, "may not amend his complaint to add new claims by raising them for the first time in his motion papers." Ifill v. N.Y. State Court Officers Ass'n, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir.1998)). Accordingly, the Court will not consider these claims, but notes that in any event, the ADA claim fails, because "[i]ndividuals cannot be named as defendants in ADA suits in either their official or representative capacities." Carrasquillo v. City of N.Y., 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004).

the City Defendants—indeed, he is bringing those very claims in this action. Moreover, although the City Defendants argue that Tavares's malpractice claim is time-barred (City Defs.' Br. 21–22), Tavares does not allege that the allegedly false statements made by the DOCCS Defendants caused him to delay bringing the claim. In fact, he does not allege that he ever believed the DOCCS Defendants' contention that his hearing loss was caused by noise exposure. Finally, to the extent Tavares claims that the allegedly falsified medical records make it more difficult for him to prove his malpractice case now, the claim still fails, because

> a plaintiff who has knowledge of the facts giving rise to his claim and an opportunity to rebut opposing evidence does have adequate access to a judicial remedy. If a governmental official is lying, for instance, the plaintiff can attempt to demonstrate the falsity of the official's statements through discovery and argument before the court. The point of the backward-looking right of access recognized by other circuits is to ensure that plaintiffs have that opportunity—not to convert every instance of deception by a governmental witness into a separate federal lawsuit.

Sousa, 702 F.3d 124, 128–129 (emphasis in original). Here, none of the DOCCS Defendants' actions foreclosed Tavares's opportunity to argue that the medical records did not accurately state the cause of his hearing loss. Thus, his "cover-up" claim under section 1983 must be dismissed.[9]

      The conspiracy claim fares no better. A section 1983 conspiracy claim must allege "(1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only

---

[9] In his submission in opposition to the DOCCS Defendants' motion, Tavares attempts to rebut these arguments by claiming that the DOCCS Defendants violated 18 U.S.C. § 1035(a)(2), which forbids making "materially false, fictitious, or fraudulent statements . . . in connection with the delivery of . . . health care . . . services." Section 1035, however, is a criminal statute, for which there is no private right of action. Hankins v. Super. Ct., No. 1:12-cv-01740-LJO-SKO, 2014 WL 584311, at *3–4 (E.D. Cal. Feb. 12, 2014); McCray v. U.S. Postal Serv., No. 10-30171-MAP, 2011 WL 7429503, at *4 (D. Mass. Nov. 15, 2011), adopted, 2012 WL 612509 (D. Mass. Feb. 24, 2012); Slovinec v. Ill. Dep't of Human Servs., No. 02 C 4124, 2005 WL 442555, at *7 n.7 (N.D. Ill. Feb. 22, 2005).

conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993)).  Specifically, a complaint "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Gourd, 340 F.3d 105, 110 (2d Cir. 2003) (discussing conspiracies under 42 U.S.C. § 1985).

        Tavares's allegations do not meet this standard.  The amended complaint simply reads: "Defendants Dr. Nelson Muthra, and MD Maryann Genovese went even further in trying to cover-up the Defendants at Belleview Hospital by stating that Plaintiff hearing loss was indeed due to working in construction with heavy equipments without any facts to support their statement, making Dr. Muthra and MD Genevese co-conspiritor by trying to support or endorced Defendant Dr. Lawrence Meiteles medical report" (sic). (Am. Compl. ¶ 11.)  Tavares thus jumps directly from the DOCCS Defendants' separate statements to the conclusion that they were conspiring together.  "Merely to assert that a conspiracy occurred, however, does not suffice. Rather, [Tavares] must allege specific facts that, if taken as true, make it plausible that [the DOCCS Defendants] had some agreement or understanding . . . to commit the alleged constitutional violations." Bermudez v. City of N.Y., No. 11 Civ. 750(LAP), 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013) (dismissing a conspiracy claim where the plaintiff alleged that the defendants "conferred and agreed not to pursue" certain evidence, "agreed not to disclose" certain information, and "actively conspired to suppress the actual events").  This the complaint does not do, and while Tavares's affidavit submitted in opposition to the DOCCS Defendants' motion gives slightly more details about Muthra's statement and Genovese's endorsement, it,

- 17 -

too, fails to put forward any facts supporting the inference that the DOCCS Defendants acted in concert.  Accordingly, Tavares's conspiracy claim must be dismissed as well.

II.     State-Law Claims

The complaint can plausibly be read as alleging medical malpractice against the City Defendants.  That claim, however, is time-barred, and must be dismissed.  Actions for personal injuries against HHC must be brought no more than one year and ninety days after the cause of action accrues.  N.Y. Unconsol. Laws § 7401(2).  The same time limitation applies to claims against employees of New York City agencies and of HHC.  N.Y. Gen. Mun. Law § 50-k(6); N.Y. Unconsol. Laws § 7401(6) (defining HHC to be an "agency" for the purposes of N.Y. Gen. Mun. Law § 50-k).  In New York, a medical malpractice claim accrues on the date when the alleged negligent act occurred.  N.Y. C.P.L.R. 214-a.  Tavares's claim thus accrued, at the latest, on March 22, 2011, when he was discharged from Bellevue following his course of antibiotics.  Because this action was filed on May 3, 2013, more than two years later, it is untimely.

Tavares resists this conclusion, arguing that he attempted to file a medical malpractice action in state court on May 22, 2012, which, unbeknownst to him, was never docketed.  The Court is unaware of any rule under which this circumstance would toll the statute of limitations.  In New York, courts may not toll statutes of limitations in the interest of justice, except under explicit statutory authority.  N.Y. C.P.L.R. 201; Ali v. Moss, 35 A.D.3d 640, 641 (2d Dep't 2006) ("the courts, in general, have no inherent power to extend a period of limitations in the interest of justice").  New York law provides that when an action is timely commenced and is then terminated "because of some error pertaining neither to the claimant's willingness to

prosecute in a timely fashion nor to the merits of the underlying claim," George v. Mt. Sinai Hospital, 47 N.Y.2d 170, 178–79 (1979), the plaintiff may commence a new action within six months after the termination, even if the new action would otherwise be untimely. N.Y. C.P.L.R. 205(a). In Tavares's case, however, it appears that his state-court action was never actually commenced. Tavares also appears to argue that the City Defendants should be estopped from asserting a statute of limitations defense, because the state court and the New York City Comptroller's Office failed to process his paperwork for commencing his state-court lawsuit while giving him the impression that the lawsuit had been properly commenced. Equitable estoppel is only applicable, however, "where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 552 (2006) (quoting Zumpano v. Quinn, 6 N.Y.3d 666, 673 (2006)) (emphasis added); see generally Werking v. Amity Estates, Inc., 2 N.Y.2d 43, 53 (1956) ("To constitute estoppel, the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another." (quoting N.Y. Rubber Co. v. Rothery, 107 N.Y. 310, 316 (1887)) (ellipsis and quotation marks omitted)). Because none of the defendants are alleged to have played any role in Tavares's failure to commence his state-court action, estoppel cannot apply against them.

Finally, whatever state-law claims Tavares may have against the DOCCS Defendants must be dismissed, because they may not be brought in federal court. State-law claims for damages against DOCCS employees within the scope of their employment must be brought in the New York Court of Claims as claims against New York State. N.Y. Corr. Law § 24(2); Baker v. Coughlin, 77 F.3d 12, 14–16 (2d Cir. 1996). Tavares does not dispute that this rule applies to the DOCCS Defendants.

CONCLUSION

For the foregoing reasons, the DOCCS Defendants' motions to dismiss the complaint are GRANTED, and the City Defendants' motion to dismiss is GRANTED with respect to all of the City Defendants except for Deutsch.  The motion is DENIED with respect to Tavares's claim against Deutsch based on Deutsch's alleged failure to protect his surgical wound.

Counsel for the defendants shall provide the plaintiff with copies of all unreported decisions cited herein.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge


Dated: New York, New York
       January 13, 2015