UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PEDRO TAVARES,

                              Plaintiff,                          13 cv 3148 (PKC)(MHD)

          -against-                                                MEMORANDUM
                                                                   AND ORDER

N.Y.C. BELLEVIEW HOSPITAL, et al.,

                              Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Originally, plaintiff Pedro Tavares brought this action against the New York City

Health and Hospitals Corporation and several employees (the "City Defendants"), as well as

three employees of the New York State Department of Corrections and Community Supervision

("DOCCS") (the "DOCCS Defendants").  He alleged that, while incarcerated, he was provided

inadequate medical care, resulting in a hearing impairment, and that the defendants falsified

medical records in order to cover up the real cause of his impairment.  The claims are brought

under 42 U.S.C. § 1983 and New York common law.

          In this Court's January 13, 2015 Memorandum and Order, the DOCCS

Defendants' motion to dismiss was granted in its entirety, and City Defendants' motion was also

granted, except as to one of the City Defendants, Michael Deutsch.  The Court held that the

plaintiff had stated a claim for relief for deliberate indifference to his medical needs against

defendant Deutsch "insofar as it is premised on Deutsch's failure to bandage or otherwise protect

Tavares's wound following the carpal tunnel surgery."  Tavares v. New York City Health &

Hospitals Corp., No. 13 cv 3148 (PKC) (MHD), 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13,

2015).  With the record fully developed, defendant Deutsch now moves for summary judgment

pursuant to Rule 56, Fed. R. Civ. P.  For the following reasons, defendant Deutsch's motion for summary judgment is granted.

LOCAL RULE 56.1 AND THE SUMMARY JUDGMENT RECORD

Defendant Deutsch submitted the notice required to a pro se party as to the requirements for opposing a motion for summary judgment, and annexed the text of Rule 56 and Local Civil Rule 56.1.  (Dkt. No. 117.)  Local Civil Rule 56.2.  In opposition to defendant Deutsch's motion, Tavares submitted a memorandum of law, declarations in response to defendant Deutsch's and Omar Tuffaha's declarations, as well as a declaration "in Response and Opposition to Defendant Dr. Deutsch Motion for Summary Judgment."  (Dkt. Nos. 123-127.)  Tavares has not, however, submitted a statement in opposition to the defendant's Local Civil Rule 56.1 statement.  Although "a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).  In light of Tavares's pro se status, as well his numerous filings in response to defendant Deutsch's opening papers, the Court has reviewed and considered all materials submitted by Tavares.  His failure to submit a Local Rule 56.1 statement plays no role in the outcome of defendant's motion.

BACKGROUND

On a motion for summary judgment, the Court views all evidence of record in the light most favorable to Tavares as the non-moving party, and draws all reasonable inferences in his favor.  See generally Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

Plaintiff Pedro Tavares was first diagnosed with carpal tunnel syndrome in or around the end of 2008 while imprisoned at George Motchan Detention Center.  (Tuffaha

Declaration, Ex. A, Tavares Dep. 29:14-18, 29:24-30:6.)  Initially, prison doctors attempted to resolve the issue with physical therapy.  Over the course of six to eight months, Tavares attended physical therapy sessions, where he was instructed to do various exercises to stretch the muscles in his hand.  (Id. 29:16-19, 30:6-14, 31:8-15.)  Despite attending physical therapy once or twice a week, however, Tavares's hand continued to worsen until eventually, prison doctors decided to perform carpel tunnel surgery.  (Id. 29:19-21.)

On March 7, 2011, Tavares was transferred from the George R. Vierno Center at Rikers Island ("GRVC") to Bellevue Hospital ("Bellevue") in preparation for his carpel tunnel surgery scheduled for the following day.  (Id. 37:21-22.)  He was seen by several members of the hospital staff over the course of the day, including his surgeons, who checked to ensure that Tavares was ready for his surgery.  (Id. 38:3-43-17.)  In addition, Tavares received pre-operation care, which included an I.V. to manage his diabetes.  (Id. 44:2-22.)  Hospital staff also "took plaintiff's vitals, reviewed his medications, noted his medical and surgical history, and assessed his risk factors, including plaintiff's history of hypertension and diabetes."  (Decl. of Dr. Michael Deutsch ¶ 13.)

On March 8, 2011, Tavares underwent surgery for carpel tunnel syndrome on his left hand.  (Pl.'s Decl. in Resp. and Opp'n to Def. Dr. Deutsch Mot. for Summ. J. ¶ 3.)  To prevent infection, surgeons administered a prophylactic antibiotic, and the "incision was washed out and cleansed with a sodium chloride irrigation solution to clean the wound and remove debris."  (Decl. of Deutsch ¶ 18.)  The wound was then sutured and covered in Dermabond, which is "designed to prevent against surgical site infection in bonding the skin together to prevent germs and water from entering."  (Pl.'s Decl. in Resp. and Opp'n to Def. Dr. Deutsch Mot. for Summ. J. ¶ 4-5.)

Following the surgery, Tavares spoke with the surgeons, who informed him that the surgery was successful and that the numbness that he was experiencing was corrected. (Tuffaha Declaration, Ex. A, Tavares Dep. 55:10-16.)  From the post-surgery recovery room, Tavares was taken back to his hospital room to recuperate further.  (Id. 56:6-11.)  Sometime later, a correction officer came to Tavares's room and told him to pack his things, and that he was being discharged from the hospital.  (Id. 56:12-15, 57:2-19.)[1]  Correction officers in the intake area told Tavares that he was being discharged because he had a court date the following day (Id. 64:19-65:1); however, Tavares later learned that there was no such court date.  (Id. 68:3-10.)

Tavares then went to the intake area of the hospital, where prisoners wait to be transferred from Bellevue back to prison.  Once there, Tavares informed the correction officers that he would not leave until he saw a doctor.  (Id. 57:16-19.)  The officers initially refused Tavares's request and attempted to handcuff him; however, Tavares refused to be handcuffed and requested to see a doctor again.  (Id. 58:10-23.)  The officers ultimately acquiesced and sought a doctor to speak with Tavares.  Ultimately, defendant Deutsch arrived to speak with Tavares.  (Id. 59:1-13.)  Tavares asked defendant Deutsch why "the wound was uncovered when [he] was going to be cuffed to a handcuff being used by other inmates."  (Id. 60:4-17.)  He also requested a "gasket" or bandage to protect his wound before being handcuffed.  (Id. 61:8-13.)  Defendant Deutsch responded that the wound did not need to be covered, and that the surgery was well performed and that the hand was protected.  (Id. 60:16-17.)  Tavares's conversation

---

[1] The parties continue to dispute the date of Tavares's discharge.  However, as will be discussed, the date is immaterial to the disposition of the motion.

with defendant Deutsch was very short, lasting only one or two minutes.  (Tuffaha Declaration, Ex. A, Tavares Dep. 64:4-7.)  Tavares was subsequently handcuffed and transported back to GRVC without additional protection for his wound.  (Id. 60:18-61:4.)

On March 16, 2011, Tavares returned to Bellevue to treat a post-operation infection that developed from his surgical wound.  (Pl.'s Decl. in Resp. and Opp'n to Def. Dr. Deutsch Mot. For Summ. J. ¶ 6.)  The infection was treated with Vancomycin, an antibiotic, "for 4 days via intravenous IV."  (Id.)  Vancomycin is an ototoxic antibiotic which could cause "hearing loss, especially in the presence of renal insufficiency."  (Id., Ex. 19.)  Approximately one week after Tavares's infection was contained, he began "to notice that he could not hear loud noise in general."  (Id. ¶ 7.)  A test conducted by an audiologist revealed that "Plaintiff had lost his high tones hearing site."  (Id.)  According to the audiologist, this hearing loss may be related to ototoxicity from the use of IV antibiotics.  (Id., Ex. 17.)  Ultimately, Tavares's hearing loss will progress to total deafness.  (Id. ¶ 8.)

LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law.  Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of

production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate.  Rule 56(a), Fed. R. Civ. P.

DISCUSSION

   A.  Evidentiary Issues

         As an initial matter, Tavares contends that defendant Deutsch and others at Bellevue have altered or fabricated medical records to make it appear that he was released on March 9, 2011—a day after his surgery—rather than on March 8, 2011, a few hours after his surgery.  (Pl.'s Mem. of Law in Supp. Of Pl.'s Ans. to Dr. Deutsch's Mot. for Summ. J. 9.) Accordingly, Tavares requests that the Court order defendant Deutsch to produce several documents, all relating to proving that he was in fact released on March 8, 2011.  Specifically, Tavares seeks surveillance videos and correction officers' log books from GRVC.  (Id.)  In addition, Tavares's memorandum of law urges sanctions against defendant Deutsch for the spoliation of the unproduced evidence.  (Id. 22-23.)

         The Court denies Tavares's request for production of additional documents. Tavares's claim premised on the time of his discharge from Bellevue was already dismissed based on Tavares's failure to allege that it was "unreasonable to discharge a patient . . . a few hours after the operation."  Tavares, 2015 WL 158863, at *6.  In addition, Magistrate Judge Dolinger has previously resolved this discovery dispute, and stated that "it appears that all

responsive documents relevant to the one remaining claim in the case have been produced."
(Dkt. No. 111.)  At no time has plaintiff sought review of any order of Magistrate Judge
Dolinger.  See Rule 72(a), Fed. R. Civ. P.

           Tavares's surviving claim, following this Court's ruling on the motion to dismiss,
relates to defendant Deutsch's failure to supply bandages for his surgical wound before
discharge, and the evidence sought by Tavares has no bearing on that claim.  In addition, the
resolution of Tavares's one remaining claim does not depend on the resolution of this timing
dispute, and therefore, it does not defeat defendant Deutsch's summary judgment motion.  See
Anderson, 477 U.S. at 247-48 (1986) ("By its very terms, this standard provides that the mere
existence of *some* alleged factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement is that there be no *genuine*
issue of *material* fact.") (emphasis in original).

B.  Eighth Amendment Claim

           With respect to the merits of the surviving claim, the Court construes it as
alleging that defendant Deutsch was deliberately indifferent to Tavares's need for medical
treatment in violation of the Eighth Amendment.  The Eighth Amendment prohibits government
actors from inflicting "cruel and unusual punishments."  U.S. Const. amend. VIII.  The
Amendment is applicable to the states through the Fourteenth Amendment, and is violated by
"unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 320 (1986).
While the Supreme Court has recognized a claim for inadequate medical care of a prisoner under
the Eighth Amendment, not every lapse in medical care amounts to a constitutional violation.
See Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A prisoner must demonstrate that medical staff
was deliberately indifferent to his serious medical needs.  See id. at 104-105.  Accordingly, a

prisoner must not only show that the purported injury was an objectively serious medical condition, but also that the prison officials involved exhibited deliberate indifference to the prisoner's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

To satisfy the objective element of the claim, a prisoner must show that (1) he was actually deprived of adequate medical care, and (2) that the inadequacy is sufficiently serious. Salahuddin v. Goord, 467 F.3d 263, 279-280 (2d Cir. 2006).  With respect to proving an actual deprivation, a prison official is only required to provide reasonable care, and therefore, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause." Id. (citing Farmer, 511 U.S. at 847).  Conversely "failing 'to take reasonable measures' in response to a medical condition can lead to liability." Id. at 280 (citing Farmer, 511 U.S. at 847).  To show that the inadequacy was sufficiently serious, the court must examine "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id.  Where the claim relates to a complete failure to provide any treatment for an inmate's medical condition, "courts examine whether the inmate's medical condition is sufficiently serious." Id. (citing Smith v. Carpenter, 316 F.3d 178, 185–86 (2d Cir.2003)).  However, where the claim relates to the inadequacy of the medical treatment, "the seriousness inquiry is narrower," and the focus is on the unreasonableness of the inadequacy.  Id.

In addition to providing objectively inadequate medical care, the prison official must have acted with the requisite subjective intent.  To satisfy the subjective element of the claim, a prisoner must demonstrate that the defendant "acted with deliberate indifference to inmate health." Id.  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.

1998) (quoting Farmer, 511 U.S. at 837).  Claiming that a prison official acted negligently in

failing to provide adequate medical care does not create constitutional lability.  Estelle, 429 U.S.

at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Rather, the prisoner must show the "failure to provide adequate medical care . . . constitute[d]

'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of

mankind.'" Id. at 105-106.

   Nor can an inmate's disagreement with his treatment support a claim for cruel and

unusual punishment.  Chance, 143 F.3d at 703 (2d Cir. 1998) ("It is well-established that mere

disagreement over the proper treatment does not create a constitutional claim.").  Disagreement

over treatment relates to an issue of medical judgment and at worst, amounts to medical

malpractice, not a constitutional violation.  See Estelle, 429 U.S. at 106 ("Medical malpractice

does not become a constitutional violation merely because the victim is a prisoner.").  However,

"'certain instances of medical malpractice may rise to the level of deliberate indifference;

namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the

prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" Chance,

143 F.3d at 703 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996)).

   Here, Tavares alleges an Eighth Amendment violation based upon alleged

inadequate medical treatment of his surgical wound.  Tavares concedes that his wound was

treated, but contends that he should have received bandages for his wound, and that defendant

Deutsch was deliberately indifferent to his medical needs by discharging him without those

bandages.  Defendant Deutsch argues that the medical care that Tavares received was adequate, and that even if it was not, defendant Deutsch was not deliberately indifferent to Tavares's needs.

At the motion to dismiss stage, this Court held that Tavares sufficiently pled the objective element by alleging that "Deutsch failed to dress or bandage the wound, or to put Tavares's wrist in a splint."  See Tavares, 2015 WL 158863, at *6.  However, the record now reflects that a significant effort went into ensuring that Tavares's wound did not become infected. After the completion of his surgery, his wound was sutured.  It was also covered in Dermabond, which is "designed to prevent against surgical site infection in bonding the skin together to prevent germs and water from entering."  (Pl.'s Decl. in Resp. and Opp'n to Def. Dr. Deutsch Mot. for Summ. J. ¶ 5.)  Furthermore, surgeons administered a prophylactic antibiotic to prevent infection, and the "incision was washed out and cleansed with a sodium chloride irrigation solution to clean the wound and remove debris."  (Decl. of Deutsch ¶ 18.)

Tavares argues that defendant Deutsch did not take reasonable measures to protect his wound by failing to provide bandages upon discharge when Tavares explicitly asked for them.  (Pl.'s Mem. of Law in Supp. Of Pl.'s Ans. to Dr. Deutsch's Mot. for Summ. J. 9.)  However, Tavares does not explain how defendant Deutsch acted unreasonably in denying his request for bandages in light of the significant effort to protect his wound from infection.  Having participated in Tavares's care throughout his surgery, Defendant Deutsch was aware of the treatment that Tavares received, which included antibiotics during the operation, as well as the application of Dermabond to the wound afterwards.  (Id. 7.)  Tavares does not allege that bandages are provided as a matter of course for carpel tunnel surgery, and the evidence demonstrates that the surgical team did not order bandages as post-operative care.  (Pl.'s Decl. in

Resp. and Opp'n to Def. Dr. Deutsch Mot. for Summ. J., Ex. 2.) Ultimately, Tavares fails to set

forth any evidence that defendant Deutsch was unreasonable, other than to say that he disagreed

with defendant Deutsch's decision.  While Tavares may have disagreed with the surgical team

and defendant Deutsch's approach to treating his wound, disagreements over medical treatment

cannot support a claim of cruel and unusual punishment.  See Alston, 672 F. Supp. 2d at 385

("An inmate's disagreement with his treatment or a difference of opinion over the type or course

of treatment do not support a claim of cruel and unusual punishment.") (citation omitted).

        Tavares also argues that Dermabond was insufficient protection against infection

because while Dermabond protects against germs and water, it did not protect his wound from

being "scratched, rubbed around by dirty steel hand-cuff[s]."  (Pl.'s Resp. and Opp'n to Dr.

Michael Deutsch Decl. ¶ 18.)  In other words, defendant Deutsch's failure to provide bandages

was unreasonable in light of the fact that Tavares's handcuffs would make Dermabond

ineffective.  However, Tavares does not explain how wearing handcuffs would reduce the

efficacy of Dermabond.  Dermabond is described as strengthening and protecting an incision by

"bonding the skin together."  Tavares does not set forth any evidence from which a reasonable

jury could conclude that handcuffs scratching against Dermabond could reduce its efficacy.  Nor

does Tavares set forth any evidence from which a reasonable jury could conclude that

Dermabond is not as efficacious as bandages.  Without more, Tavares's unsupported assertion

does not raise a genuine issue of material fact.  See Quarles v. Gen. Motors Corp. (Motors

Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) ("[M]ere conjecture or speculation by the party

resisting summary judgment does not provide a basis upon which to deny the motion.").

Furthermore, Tavares's argument fails to take into account the other precautions that the surgical

team took to ensure that his wound was protected from infection.  See Chance, 143 F.3d 698,

703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Even if the medical care that Tavares received was inadequate, Tavares has failed to show that Defendant Deutsch was sufficiently culpable to create constitutional liability. In the motion to dismiss opinion, this Court held that Tavares sufficiently pled the subjective prong, because his motion could be construed as alleging that "Deutsch knew of Tavares's heightened susceptibility to infection, and consciously disregarded it by prioritizing the scheduled resentencing over Tavares's medical needs." Tavares, 2015 WL 158863, at *6. However, Tavares has failed to substantiate his allegation and instead, directly refutes it with his deposition testimony. Tavares testified that he spoke with defendant Deutsch only for one to two minutes before being discharged. (Tuffaha Declaration, Ex. A, Tavares Dep. 64:4-7.) During that conversation, Tavares testified that defendant Deutsch only stated that everything was fine with Tavares's wound. (Id. 79:18-22.) Furthermore, when asked with who he discussed his court date for resentencing, Tavares said that he discussed it with the transportation officers, (Id. 64:19-65:1), and explicitly testified that he did not discuss it with defendant Deutsch. (Id. 65:2-6.) Outside of this interaction in the intake area, Tavares does not allege that he spoke with defendant Deutsch about his discharge. As such, Tavares has failed to demonstrate that defendant Deutsch knew about, much less prioritized, his resentencing over medical care.

For the first time, in response to defendant Deutsch's declaration, Tavares states that when he spoke with defendant Deutsch in the intake area, defendant Deutsch explained that he was being discharged because "the Department of Corrections [sic] need it Plaintiff to be produce in Court for re-sentence." (Pl.'s Resp. and Opp'n to Dr. Michael Deutsch Decl. ¶ 25.) While the Court construes a pro se plaintiff's allegations liberally, McPherson v. Coombe, 174

F.3d 276, 280 (2d Cir. 1999), a party may not create a genuine issue of material fact with an affidavit contradicting prior sworn testimony.  See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572-73 (2d Cir. 1991).  While a material issue of fact may exist if "subsequent sworn testimony . . . amplifies or explains, but does not merely contradict, [] prior sworn testimony," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996), that is not the case here.  Tavares testified that he did not discuss a court date with defendant Deutsch.  His answers were clear, and his current contention can only be construed as contradicting his earlier deposition testimony.  Permitting Tavares to do so would thwart the purpose of summary judgment.  See Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").  Without more, Tavares has failed to raise a genuine issue of material fact with respect to defendant Deutsch's state of mind.

CONCLUSION

For the foregoing reasons, defendant Deutsch's motion for summary judgment (Dkt. No. 112) is granted.  The Clerk of the Court is directed to enter judgment for defendant and close the case.

Counsel for the defendants shall provide Blocker with copies of all unreported decisions cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 30, 2015